# IN THE COURT OF APPEALS OF IOWA

_____

No. 26-0607
Filed June 24, 2026

_____

**In the Interest of X.R. and J.R., Minor Children,**

**T.R., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Scott County,
The Honorable Cheryl Traum, Judge.

_____

**AFFIRMED**

_____

Patricia Rolfstad, Davenport, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, attorney and
guardian ad litem for minor children.

_____

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A mother appeals the termination of her parental rights to her children, X.R. and J.R.,[1] contending that termination is not in their best interests. Agreeing with the juvenile court that termination is in the children's best interests, we affirm.

## BACKGROUND FACTS & PROCEEDINGS

The children were ages thirteen and eleven, respectively, at the time of the termination hearing. They first came to the attention of the Iowa Department of Health and Human Services in February 2024. X.R., who has hearing issues and is autistic and non-verbal, was found alone at an intersection. The mother was reported to be using methamphetamine and to have engaged in sexual acts in the children's view. The department could not initially locate the mother and the children, finding their reported home to be abandoned. After the mother was arrested in May, the department reported that her home contained insufficient food for the children and was infested with insects.

After an unsuccessful placement with their older sister, the children were placed with a suitable other in June and have since been placed in foster care. The State also filed a child-in-need-of-assistance petition in June. The suitable other had previously raised the children's other siblings, who are now adults. At the time of placement both children were significantly behind their peers developmentally. The younger child, nine years old at that time, did not attend school. Her experiences watching her mother engage in sex

---

[1] The father's parental rights were also terminated. He filed a notice of appeal, but that filing was missing the father's signature. The supreme court ordered him to file an amended notice of appeal within seven days or his appeal would be dismissed. The father did not file an amended notice of appeal, and the supreme court dismissed his appeal.

acts led to the younger child searching for and viewing "numerous pornographic material[s]" including anime and Roblox pornography on her cellphone and iPad. Neither child received regular medical or dental care, despite the older child's extensive medical needs and disabilities.

The mother was also believed to struggle with substance use, and the department provided her with recommended locations to receive substance-use and mental-health evaluations. The department case worker testified that she had pushed the mother to obtain a substance-use evaluation over the course of "multiple conversations." The mother has never complied with department requests to engage in drug testing. Likewise, she has never engaged in the department-requested mental-health evaluations. At the time of the January 2025 review hearing, the mother was homeless, could not maintain long-term employment, and had changed phone numbers multiple times without informing the department. The mother never appeared for the April permanency hearing despite calling the courthouse and requesting a delay. At the August hearing, the department reported that the mother had made no progress in any department goals at that time and consistently missed visits with the children. She was often late or cut visits short when she did attend. The court changed the permanency goal to termination.

The situation had not changed at the time of the termination hearing. She still had not obtained consistent housing and had not completed substance-use or mental-health evaluations. She was unemployed and was not communicating with the case worker. She considers Alcoholics Anonymous and Narcotics Anonymous sufficient alternatives to engaging in department services. The department has offered the mother transportation to various services to no avail. The younger child reported in a department interview that she was "scared" at the prospect of being returned to her

mother and scared she would be "taken" if her parents found out where she was living. The juvenile court expressly found the mother's testimony about her current living and employment situation to be uncredible, noting that her testimony "contradicts itself and the evidence presented."

The juvenile court terminated the mother's parental rights under Iowa Code sections 232.116(1)(d), (e), (f), (i), (*l*), and 232.117 (2025). She now appeals.

## STANDARD OF REVIEW

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially" when they involve witness credibility determinations. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citation omitted).

## DISCUSSION

We use a three-step analysis in reviewing the juvenile court's termination of parental rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We analyze whether (1) a statutory ground for termination has been established; (2) termination is in the children's best interest; and (3) any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). A parent waives an unchallenged ground for termination. *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Likewise, once the State has proven a ground for termination by clear and convincing evidence, the burden shifts to the parent resisting termination to establish that one of the enumerated exceptions under section 232.116(3) applies. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). But "[e]ven after we have determined that statutory grounds for termination

exist, we must still determine whether termination is in the children's best interests." *A.M.*, 843 N.W.2d at 112 (citation omitted). In considering the best interests of the child[ren], we are to give "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

"[T]he child's safety and the need for a permanent home" are the primary elements of a best-interests analysis. *In re A.M.*, No. 20-0480, 2020 WL 4814170, at *4 (Iowa Ct. App. Aug. 19, 2020). A parent's past performance "may be indicative of the quality of the future care that parent is capable of providing." *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). So "[r]ather than speculate about what the future holds for" a parent, "it is more accurate to look in the rear-view mirror and make a decision for [the children] based on what has already happened." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). "In determining [the children's] best interests, 'we look to [the parent's] past performance because it may indicate the quality of care'" the parent can provide the child in the future. *Id.* at 172 (citation omitted). "It is well-settled law that we cannot deprive a [the children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *A.B.*, 815 N.W.2d at 777.

The mother's parental rights were terminated under Iowa Code sections 232.116(1)(d), (e), (f), (i), (*l*), and 232.117. She does not challenge the grounds under which her parental rights were terminated and thus concedes the unchallenged grounds have been met. *See J.P.*, 2020 WL 110425, at *1. The mother limits her argument to the contention that

5

"[t]ermination is not in the children's best interests because the children have a bond with the mother. In addition, the mother believes that a guardianship would be the more appropriate permanency arrangement at this time given the strong bond and age of the children."

Even granting that the mother and the children have a close bond, the existence of a bond on its own, will not override considerations of the child's safety, long-term growth, and physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2). Those other considerations are our primary concerns in this case. The mother has not resolved substance-use concerns, with the family having originally come to the department's attention due in part to reports that she was using methamphetamine. *See In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017) ("Methamphetamine is a scourge."). And the mother has not shown a commitment to maintaining a bond with the children, having failed to consistently participate in services or visits with the children over the past year.

Further, the children are receiving the care and support they require in their foster home. The older child can now accomplish many tasks he could not previously, such as recognizing letters, writing his name, and independently eating and using the restroom. Yet despite this improvement, he still struggles with violent outbursts and has attempted to escape foster care. This highlights the intensive care that his development will require. The younger child displayed many behavioral concerns while under her mother's care and continues to worry she will be kidnapped by her parents. The mother has not established that she is prepared for the burden that the children's needs will place on her—she has not shown she can shoulder her

own needs at this point. We agree with the juvenile court that termination is in the children's best interests.

We have reiterated on many occasions that a "guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). A guardianship presents the potential for the mother to challenge the guardianship and again throw the children's future into question. Lastly, the mother identifies no potential guardian, nor does she identify any purpose for the guardianship aside from delaying permanency. She has failed to highlight any steps she would take to resolve the barriers to reunification or how a guardianship would further such steps. A guardianship is not appropriate here.

We affirm the juvenile court's termination of the mother's parental rights to the children.

**AFFIRMED.**